IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. Cr. S-04-0069 MCE |
| vs. | |
| JEFFREY WELLS, LARRY J. WELLS, HENRY M. KAISER, | |
| Defendants. | <u>FINDINGS AND RECOMMENDATIONS</u> |
| _____/ | |

This matter is before the court on SureWest Communications' and Ernst & Young's motions to quash subpoenas duces tecum issued on application of counsel for defendant Larry J. Wells. At argument on the motion, held on July 21, 2005, Mark L. Tuft of Cooper, White & Cooper LLP appeared specially for SureWest Communications; Megan Dixon of Heller Ehrman LLP appeared specially for Ernst & Young; William J. Portanova appeared for Larry J. Wells; Wayne Ordos appeared for Jeffrey Wells. After the hearing, the court received <u>in camera</u> submissions from SureWest Communications and Ernst & Young and has considered these, the arguments, and the briefing in recommending a resolution of the pending motions.

/////

/////

/////

1

I. <u>Background</u>

In an indictment filed February 25, 2004, the government charges Jeffrey Wells and his father Larry Wells with wire fraud, 18 U.S.C. § 1343; interstate transportation of money taken by fraud, 18 U.S.C. § 2314; money laundering, 18 U.S.C. § 1956 (a)(1); transactions in criminally derived property, 18 U.S.C. § 1957; and seeks forfeiture of property, 18 U.S.C. § 982 (a)(1).[1] According to the indictment, Jeffrey Wells was a senior treasury analyst at SureWest Communications and his father, Larry Wells, was a partner in Quivira Ventures and related entities. It is alleged that Larry Wells induced Jeffrey Wells to transfer money from SureWest to Quivira Ventures even though Jeffrey Wells was not authorized to do so; Larry Wells periodically transferred money from Quivira to SureWest to conceal the appropriations. Indictment ¶¶ 1-2, 4-6. These activities occurred in 2003. <u>Id</u>. ¶ 4.

On April 5, 2005, defense attorneys William Portanova and Wayne Ordos submitted an <u>ex parte</u> request to the district judge assigned to this case, requesting the issuance of a subpoena duces tecum under Federal Rule of Criminal Procedure 17(c) to SureWest Communications. Def'ts' Response Mots. to Quash (Response), Ex. 1. Counsel represented to the court that "certain investigations and audits" would support the defense position that "the investments at issue were in fact reasonably believed by the defendants to have been authorized by the company." <u>Id</u>., Ex. 1 at 1. The district court authorized the subpoena, which directed SureWest to produce the independent auditor's report prepared by Ernst & Young, the Audit Committee's report of a "special investigation," a forensic auditor's report prepared by DeLoitte and Touche, investment guidelines, and the report based on SureWest's investigation of Jeffrey Wells' activities. Decl. of Gay Herring Supp. SureWest's Mot. to Quash (Herring Decl.), Ex. 1 at 3.

---

[1] A third defendant, Henry Kaiser, has pleaded guilty. Docket Nos. 30 & 32 (minutes of 4/13/04, change of plea, and plea agreement).

On April 29, 2005, defense counsel submitted a second ex parte request, seeking a subpoena duces tecum for documents directed to Ernst & Young. Counsel told the court that Ernst & Young performed audits for SureWest during the period 2001-2004 and would have examined the "investment policies, investment guidelines, accounting procedures, financial transactions, and bank accounts" and would have generated "certain documents." Response, Ex. 3 at 2. The district court authorized this subpoena, which directed production of "all audited financial statements, work papers, permanent files, and correspondence files for the audits of Surewest, Inc., for the years 2001, 2002, 2003, and 2004," including an exhaustive list of document types. Decl. of Joel Bonner Supp. Ernst & Young's Mot. to Quash (Bonner Decl.), Ex. A.

SureWest and Ernst & Young have filed motions to quash, raising a number of procedural and substantive objections to the subpoenas.[2]

II. Pre-Trial Subpoenas Duces Tecum

According to Rule 17(c) (1) of the Federal Rules of Criminal Procedure, a pretrial subpoena may direct a witness

> to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.

The rule "was not intended to provide an additional means of discovery," Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951), but rather provides a means for a defendant to obtain "specific, identifiable evidence for trial." United States v. Ruedlinger, 172 F.R.D. 453, 455 (D. Kan. 1997).

---

[2] In its pleadings, SureWest argues that service of the subpoena on it was improper. SureWest's Mem. P. & A. Supp. Mot. to Quash (SW Mot.) at 3-4. At argument on the motion, SureWest dropped its challenge to the nature of the service, but maintained its claim to witness fees and mileage as a prior condition of compliance with the subpoena.

A Rule 17(c) subpoena is properly issued when the party seeking it has shown "(1) relevancy; (2) admissibility; (3) specificity." United States v. Nixon, 418 U.S. 683, 700 (1974). To meet this burden, the party must show a "sufficient likelihood" that the documents sought are "relevant to the offenses charged in the indictment" and make a "sufficient preliminary showing that [the material] contains evidence admissible with respect to the offenses charged." Id. A defendant's "mere hope" that the documents will produce favorable evidence will not support the issuance of a subpoena. Ruedlinger, 172 F.R.D. at 456.

A party may obtain a subpoena ex parte upon a preliminary showing that the Nixon factors have been met. United States v. Tomison, 969 F. Supp. 587, 593-94 & n.14 (E.D. Cal. 1997); see also United States v. Reyes, 162 F.R.D. 468, 469-70 (S.D.N.Y. 1995). The recipient may seek to quash such a subpoena on the grounds that compliance would be "unreasonable or oppressive," an inquiry that encompasses claims of privilege attaching to the documents sought. Tomison, 969 F. Supp. at 596-98. Moreover, in determining a motion to quash, a court "must reconsider the *Nixon* standard in determining whether 'compliance with the subpoena would be unreasonable or oppressive.'" United States v. Beckford, 964 F. Supp.1010, 1028 (E.D. Va. 1997).

III. SureWest's Motion To Quash

In its pleadings and at argument, SureWest contends that the documents sought in requests two (report of the special investigation of the audit committee) and three (forensic audit prepared by Deloitte & Touche) do not exist, that the investment guidelines sought in request four have been produced to the Wellses in civil litigation, and that the documents sought in requests one and five are not relevant or admissible and are confidential and privileged. Decl. of Kenneth J. Philpot Supp. Mot. To Quash (Philpot Decl.) (no written report from Deloitte & Touche); Decl. of David Herrick Supp. Mot. To Quash (undertook investigation into Wells' activities and, at the behest of counsel, prepared written report). In addition, SureWest has asked

the court to direct the Wellses to cover the costs of SureWest's and Ernst & Young's compliance with the subpoenas, if ordered.

After hearing, this court directed SureWest to provide for <u>in camera</u> review Ernst & Young's independent audit report, with attachments, and SureWest's internal investigation of Jeffrey Wells' activities, along with an update of the investigation into Jeffrey Wells' activities.

After reviewing SureWest's internal investigation report and its updated version, the court finds there is not a "sufficient likelihood" these reports are relevant to the Wellses' good faith defense. Neither document suggests, as the Wellses have surmised, that SureWest's investment policies were so lax and ill-defined as to encourage Jeffrey Wells' use of SureWest's funds in his father's business. <u>Cf.</u> <u>United States v. Anderson</u>, 31 F. Supp. 2d 933, 945 (D. Kan. 1998) (the fact that officials were unable to detect illegal activity during their reviews of defendants' conduct is not relevant to question of legality of that conduct or defendants' intent). Accordingly, the court finds those documents provided by SureWest and Bates-stamped page numbers SWC-CR 0015-0145 do not meet the <u>Nixon</u> standards and should not be released.

The second set of documents, the Ernst & Young report to the SureWest Audit Committee with attachments, in contrast, meets the <u>Nixon</u> standards. There is a sufficient likelihood that this set of documents is relevant to the offenses. Moreover, because the reports were prepared as part of SureWest's efforts to prepare its filings for the SEC, they appear to be business records within the meaning of Federal Rule of Evidence 803(6). <u>See</u> <u>Clark v. City of Los Angeles</u>, 650 F.2d 1033, 1036-37 (9th Cir. 1981); <u>United States v. Scholl</u>, 166 F.3d 964, 978 (9th Cir. 1999). Finally, they were described with specificity in the subpoena. Accordingly, the court finds that those documents Bates-stamped page numbers SWC-CR 0001-0014 and 0147-0161 should be released to the defense. Before SureWest should be required, to comply, however, counsel for the Wellses must tender fees and costs as required by Federal Rule of Criminal Procedure 17(d).

1   SureWest's broader request for reimbursement for the costs of complying with the
2  subpoenas is not well taken.  Matter Of Midland Asphalt Corp., 616 F. Supp. 223, 225 (W.D.
3  N.Y. 1985).

IV.  Ernst & Young's Motion To Quash Or Modify

Ernst & Young challenges the subpoena's satisfaction of the Nixon factors and argues that compliance would be burdensome because it would require the company to format and print documents that would fill fifteen to twenty boxes.  Bonner Decl. ¶¶ 8-9.  It argues that only two categories of workpapers are even arguably relevant: the 2003 workpapers and documents related to two line items on SureWest's balance sheets for cash and cash equivalents and short term investments.  Id. ¶ 7.  At argument on the motion, counsel for Ernst & Young agreed that its objection as to the burden of compliance would be resolved if the court modified the subpoena to require production of only these categories.   Ernst & Young provided documents in these categories for this court's in camera review.

After conducting the review, the court finds that the documents Bates-stamped page numbers E&Y000023-000029, 000255-000264, 000309-000330 and 00357-000358 concern SureWest's investment accounts and investment policies and meet the Nixon requirements of relevance, admissibility and specificity and their production would be neither burdensome nor oppressive.   The documents Bates-stamped page numbers E&Y000309-000330 and 000357-000358 concern SureWest's financial oversight and investment policies, which suggests the potential relevance of these business records to the defense.  As suggested by counsel for Ernst & Young, these modified categories of subpoenaed material meet the requirement of specificity.

The remaining documents submitted by Ernst & Young are not appropriate for release.

/////

/////

IT IS HEREBY RECOMMENDED that:

1. SureWest's motion to quash be granted in part and denied in part and that the documents bearing Bates-stamped page numbers SWC-CR 0001-0014 and 0147-0161 be released to counsel for Jeffrey and Larry Wells within 30 days of the district court's adoption of these findings and recommendations, subject to the Wellses' tendering fees and costs as required by Federal Rule of Criminal Procedure 17(d) ; and

2. Ernst & Young's motion to modify and quash the subpoena be granted in part and denied in part and that the documents bearing Bates-stamped page numbers E&Y000023-000029, 000255-000264, 000309-000330 and 00357-000358 be released to counsel for Jeffrey and Larry Wells, also within 30 days of the district court's adoption of these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within five days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  October 17, 2005.

_____
UNITED STATES MAGISTRATE JUDGE

2
wells.ic